# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-05026-03-CR-S-ODS |
| | ) | |
| **NORTH SHORE** | ) | |
| **INVESTMENTS, LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Beth Phillips, United States Attorney, and by Robyn L. McKee, Assistant United States Attorney, and the defendant, North Shore Investments, LLC, ("North Shore," or "defendant"), represented by Andy Hosmer, Esquire.

The defendant understands and agrees that this plea agreement is only between it and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea**. The defendant agrees to and hereby does plead guilty to Count Two of the Indictment charging it with a violation of Title 33, United States Code, § 1319 (c)(2)(A) and Title 18, United States Code, Section 2, that is, aiding and abetting a violation of the

Clean Water Act. By entering into this plea agreement, the defendant admits that it knowingly committed this offense and is, in fact, guilty of this offense.

   3.   **Factual Basis for Guilty Plea.**  The parties agree that the facts constituting the offense to which defendant is pleading guilty are as follows:

### Background

From September 2007, through June 2009, North Shore Investments, LLC, (North Shore) was a Nevada limited liability company engaged in land development at a construction site known as Indian Ridge Resort Community Phase 1, Parcel 34, located southeast of Highway 76 and Highway 13, Branson West, Missouri. Construction activities occurred at the Site including clearing, grading and excavation which disturbed approximately 22 acres of land.

Donald Snider, Jr., and David Drake were the managing members, owners, and operators of North Shore. By reason of their positions as owners and operators of North Shore, Snider and Drake had the responsibility and authority to: (1) prevent violations of the CWA in the first instance; (2) promptly correct any violations of the CWA; and (3) ensure that violations of the CWA did not occur in the future.

Indian Ridge Resort, Inc., was issued a Missouri State Operating Permit MO-R109N01 for storm water, snow melt, surface drainage and runoff water leaving the site and discharging into an unnamed tributary of Table Rock Lake, all "navigable waters" as defined by Section 502(7) of the CWA, 33 U.S.C. §1362(7). North Shore, was also issued a Missouri State Operating Permit MO-R109Z39 for storm water, snow melt, surface drainage and runoff water leaving the site and discharging into an unnamed tributary of Table Rock Lake, all "navigable waters" as defined by Section 502(7) of the CWA, 33 U.S.C. §1362(7).

### The Clean Water Act

The CWA was enacted by Congress to restore and maintain the chemical, physical, and biological quality of the Nation's waters. 33 U.S.C. § 1251(a). In addition, the CWA was enacted to prevent, reduce, and eliminate water pollution in the United States and to conserve the waters of the United States for the protection and propagation of fish and aquatic life and wildlife, recreational purposes, and the use of such waters for public drinking water, agricultural, and industrial use. 33 U.S.C. § 1252(a).

The CWA prohibits the discharge of any pollutant into waters of the United States, except in compliance with a permit issued pursuant to the CWA under the National Pollution Discharge Elimination System ("NPDES") by the United States

-2-

Environmental Protection Agency (EPA) or an authorized state. 33 U.S.C. §§ 1311(a) and 1342.

Storm water contains "pollutants" as defined by Section 502(6) of the CWA, 33 U.S.C. 1362(6). Storm water runoff is a "discharge of a pollutant" as defined by Section 502(12) of the CWA, 33 U.S.C. 1362(12). A point source is defined by the CWA as any discernible, confined and discrete conveyance from which pollutants are discharged, for example a pipe, ditch, or channel or conduit. 33 U.S.C. § 1362(14).

The CWA requires permits for discharges of storm water runoff. 33 U.S.C. § 1342(p).

Federal regulations define the term "storm water discharge associated with industrial activity" to include, among other things, storm water discharges from construction activities, including clearing, grading, and excavation activities, that result in a disturbance of one or more acres of total land area. 40 C.F.R. § 122.26(b)(14)(x).

Pursuant to the CWA, states may issue their own storm water permits if they are authorized by EPA to do so. The State of Missouri has been authorized to issue storm water permits and has issued Missouri State Operating Permit, General Permit series to include MO-R101000 through MO-R109000 ("Missouri General Permit").

Any person subject to the Missouri General Permit is required to develop a storm water pollution prevention plan ("SWPPP") which sets forth a plan for minimizing and eliminating discharges of storm water associated with construction activities.

The SWPPP requires the selection of best management practices ("BMPs") designed to eliminate the migration of pollution from construction sites into the nation's waters. These practices include measures to prevent erosion (such as the scheduling of the project to minimize the amount of land that is being graded at any particular time) and measures to capture sediment before it leaves the site (such as silt fences and sedimentation basins).

The Missouri General Permit also requires implementation of the SWPPP and proper implementation and maintenance of the BMPs to eliminate discharges of storm water to the nation's waters.

The Missouri General Permit imposes additional requirements, including those for inspection of the site during construction, updating of the SWPPP to reflect changing site conditions, and final stabilization of the site.

-3-

### The Violation

From September 2007 through June 2009, said dates being approximate, in Stone County, within the Western District of Missouri, the defendant, North Shore Investments, LLC, aiding and abetting each other and others, knowingly violated the terms and conditions of Missouri General Permit authorization MO-R109Z39 on numerous occasions, including but not limited to the following violations: failing to install or have installed adequate BMPs, conduct or have conducted adequate inspections of the Site, and by discharging storm water that resulted in a violation of the Missouri Water Quality Standards; all in violation of Title 33, United States Code, Section 1319(c)(2)(A).

As a result of North Shore's failure to implement and maintain BMPs, soil from the North Shore construction site entered an unnamed tributary water of the United States and ultimately entered the waters of Table Rock Lake. The failure of North Shore to abate, control, or slow the erosion and contamination process on the North Shore property persisted through at least the end of August 2011; and therefore, resulted in an ongoing, continuous, and repetitive discharge or release of a pollutant into the environment.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining its guilt and appropriate sentence. The defendant acknowledges, understands and agrees that all other uncharged related criminal activity may be considered as "relevant conduct" in calculating the appropriate fine and sentence.

5. **Statutory Penalties.** The defendant understands that upon its plea of guilty to the Count Two of the Indictment charging it with violating the Clean Water Act, the maximum fine the Court may impose under the statute charged is the greater of not more than: (a) $5,000 to $50,000 per day of violation, (b) $500,000 per count, or (c) twice the gross gain or loss from the offense; a term of probation of not more than five (5) years, and a $400.00 mandatory special assessment which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class E felony.

-4-

**6. Penalty Recommendation.** The Government and the defendant agree that the following sentence is an appropriate disposition of this case:

a. A fine of one hundred thousand dollars ($100,000) should be assessed against the defendant for the offense to which the defendant is pleading guilty under Count Two of the Indictment. This fine should be reduced by the amount of civil penalty paid by the defendant to the State of Missouri in relation to the Consent Judgment entered between North Shore and the State of Missouri, up to a maximum $50,000. The criminal fine will be paid within the first 12 months of probation.

b. The defendant should be placed on unsupervised probation for a period of five (5) years, as provided by Section 8B2.1 of the United States Sentencing Guidelines. The probation shall include the standard conditions of probation imposed in this district, as well as the following special condition of probation: the defendant shall comply with the requirements of the civil Consent Judgment to be entered between the defendant and the State of Missouri in relation to the conduct underlying the violations alleged in Count Two. The Compliance Program will include specific operation procedures to prevent further erosion and discharge of sediment from the North Shore site into Table Rock Lake and its tributaries, and to ensure that the development at the site is properly managed and in compliance with the regulations promulgated under federal and state law. The implementation and operation of the Compliance Program, as well as defendant's continued compliance with environmental laws, will be overseen by the Missouri Department of Natural Resources, as designated by the Environmental Protection Agency. In the event the defendant sells the Indian Ridge property, or otherwise divests itself and its current members of any interest in the property, the United States agrees not to contest the defendant's request for early termination of probation.

**7. Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

a. In determining the aappropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature. The defendant understands that the United States Sentencing Guidelines relating to the sentencing of organizations do not apply to the imposition of fines for environmental crimes. U.S.S.G. § 8C2.1.

b. the Court may impose a term of probation of up to five (5) years and, if the Court imposes probation, it must not be for less than one (1) year; the Court may also impose restitution and costs of prosecution;

      c.      the Court is not bound by any recommendation regarding the sentence to be imposed;

      d.      the parties hereby waive a pre-sentence report and request the Court sentence defendant at the first available date after the entry of defendant's guilty plea;

      e.      the defendant may not withdraw its guilty plea solely because of the nature or length of the sentence imposed by the Court; and

      f.      Restitution is not applicable in this case, and the fine imposed herein should represent the full extent of monetary penalty to be imposed on defendant pursuant to this Plea Agreement.

**8.** **Government's Agreements.** Based upon the evidence in its possession at this time, the United States Attorneys' Office for the Western District of Missouri, as part of this Plea Agreement, agrees not to further prosecute defendant for any Clean Water Act violations occurring from August 2006 to present, for which it has venue and which arose out of the defendant's conduct described above. The United States further agrees to dismiss Count Two of the Indictment as to Defendant Donald Snider, Jr., and Defendant David Drake, at the time of sentencing. Defendant understands and agrees that the United States Attorney's Office for the Western District of Missouri is free to prosecute defendant or any of the aforementioned persons or entities for any other unlawful past conduct not specifically exempted by this Agreement, or any illegal conduct that occurs after the date of this Agreement.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives its right to challenge the initiation of the dismissed or additional charges against it if it breaches this agreement. The defendant expressly waives its right to

assert a statute of limitations defense if the dismissed or additional charges are initiated against it following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against it following its breach of this plea agreement, it will not be allowed to withdraw its guilty plea.

**9.  Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw its plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts its plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like, or agree with, it will not be permitted to withdraw its plea of guilty.

**10.  Government's Reservation of Rights.** The defendant understands that, provided its actions are consistent with the provisions of this Plea Agreement, the United States expressly reserves the right in this case to: oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this Plea Agreement; comment on the evidence supporting the charges in the Indictment; oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed; and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually

imposed, even if the Court chooses not to follow any recommendation made by the United States; and oppose any post-conviction motions for reduction of sentence, or other relief.

    **11.** **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that it has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a.    the right to plead not guilty and to persist in a plea of not guilty;

    b.    the right to be presumed innocent until its guilt has been established beyond a reasonable doubt at trial;

    c.    the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d.    the right to confront and cross-examine the witnesses who testify against it;

    e.    the right to compel or subpoena witnesses to appear on its behalf; and

    f.    the right to remain silent at trial, in which case its silence may not be used against it.

The defendant understands that by pleading guilty, it waives or gives up those rights and that there will be no trial. The defendant further understands that if it pleads guilty, the Court may ask its representative questions about the offense to which it has pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, its answers may later be used against it in a prosecution for perjury or making a false statement.

    **12.** **Waiver of Appellate and Post-Conviction Rights.**

    a.    The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this Plea Agreement it waives its right to appeal or collaterally attack a finding of guilt following the acceptance of this Plea Agreement.

    b.    The defendant expressly waives its right to appeal its sentence, directly or collaterally, on any ground except a sentence imposed in excess of the statutory maximum or an illegal sentence, that is, sentencing error

-8-

more serious than a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal its sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this Plea Agreement.

13. **Waiver of FOIA Request.** The defendant waives all of its rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

14. **Waiver of Claim for Attorney's Fees.** The defendant waives all of its claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

15. **Defendant's Representations.** The defendant acknowledges that it has entered into this Plea Agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that it is satisfied with the assistance of counsel, and that counsel has fully advised it of its rights and obligations in connection with this Plea Agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this Plea Agreement, have been made by the United States, the Court, its attorneys or any other party to induce it to enter its plea of guilty.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations.

a. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

b. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has paid any fine entered as part of the sentence in this case in full.

c. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

d. The defendant hereby authorizes the USAO to obtain a credit report pertaining to it to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

e. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $400 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of its fulfillment of this obligation at the time of sentencing.

f. The defendant certifies that it has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that it will make no such transfers in the future.

g. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or

nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire Plea Agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' Plea Agreement and will not be enforceable against either party.

18. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this Plea Agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this Plea Agreement.

19. **Corporate Authorization.** The authorized corporate officer who signs this Plea Agreement represents that he/she is authorized to enter into this Plea Agreement on behalf of the defendant, that all corporate requirements have been observed to permit the

-11-

authorized representative, who must be a high level corporate officer, to enter a plea on behalf of the defendant to the one count Information in this matter, and that he/she will appear, along with corporate counsel, to enter the guilty plea and for the imposition of the sentence.

20. **<u>Remediation and Compliance Obligations.</u>** By entering into this plea agreement, the defendant represents that it understands and agrees to the following additional obligations. Defendant agrees to implement a Stormwater Pollution Prevention Plan (hereinafter "remediation plan") in accordance with the Missouri Department of Natural Resources (MDNR) regulatory requirements and as described in the Missouri State Operating Permit (MSOP) associated with defendant's property. This plan should cover all phases of the project including initial remediation activities, on-going erosion and sediment control plans, final stabilization, and a sampling plan to assure appropriate erosion control measures are employed. The defendant agrees to amend and update the remediation plan in accordance with the MSOP and to update MDNR of any and all changes thereto. Further, the defendant agrees to comply with this plan and any and all State and Federal laws, regulations, and consent judgments. Defendant agrees to submit its remediation plan to the MDNR Southwest Regional Office and understands that MDNR must review and evaluate all such remediation plans in order for defendant to meet the stipulations of this plea agreement. Should defendant's remediation plan fail to satisfy MDNR, or should defendant fail to adhere to the plan, State or Federal law or regulation, or its consent judgment from the State of Missouri, defendant will have breached this plea agreement and the United States will be released from the obligations in this agreement.

-12-

Case 3:10-cr-05026-ODS   Document 59   Filed 11/21/11   Page 12 of 13

BETH PHILLIPS
                                          United States Attorney


Dated: 11-21-2011          By:     /s/ Robyn L. McKee
                                   Robyn L. McKee
                                   Assistant United States Attorney


    I am authorized to execute this plea agreement on behalf of defendant North Shore Investments, LLC. I have read this plea agreement and carefully reviewed every part of it with the attorney who represents said corporate defendant. After consultation with the attorney who represents defendant North Shore Investments, LLC, and based on authorization granted to me by the Board of Directors of North Shore Investments, LLC, I am authorized to represent, on behalf of North Shore Investments, LLC, that said corporate defendant: fully understands all the rights of said corporation with respect to the offenses charged in the Indictment; fully understand the rights of said corporation with respect to the provisions of the Sentencing Guidelines; fully understands all the provisions of this plea agreement; and, knowingly and voluntarily agrees to this plea agreement.


Dated: 11-21-2011                  /s/ Donald Snider, Jr.
                                   For North Shore Investments, LLC,
                                   Defendant
                                   By: Donald Snider, Jr.

                                   Title:  Managing Member, North Shore
                                           Investments, LLC


    I am defendant North Shore Investments, LLC's attorney. I have fully explained to North Shore Investments, LLC, its rights with respect to the offense charged in the Information. Further, I have reviewed with it the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this Plea Agreement with North Shore Investments, LLC. To my knowledge, North Shore Investments, LLC's decision to enter into this Plea Agreement is an informed and voluntary one.


Dated: 11-21-2011                  /s/ Andy Hosmer
                                   Andy Hosmer
                                   Attorney for North Shore Investments, LLC,
                                   Defendant


-13-